IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION—PLANO

| | |
|---|---|
| **DIAMOND RICHARDSON,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § CIVIL ACTION NO. _____ | |
| **CB JENI MANAGEMENT LLC, a/k/a** § | |
| **CB JENI HOMES DFW LLC,** § | |
| § | |
| Defendant. § | |
| § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Diamond Richardson files this Original Complaint against Defendant CB JENI Management LLC, a/k/a CB JENI Homes DFW LLC for violating state and federal law. The causes of action and summary of claims relating thereto are addressed below:

### I. PARTIES, JURISDICTION AND VENUE

1. Plaintiff Diamond Richardson ("Plaintiff" or "Richardson") is a United States citizen that currently resides in Collin County, Texas.

2. Defendant CB JENI Management LLC, a/k/a CB JENI Homes DFW LLC ("Defendant" or "CB Jeni") (in its assumed or common name), is a domestic entity authorized to do business, and is doing business, in the State of Texas. CB Jeni's main office is located in Plano, Texas, and it can be served through its registered agent James R. Brickman, 2805 North Dallas Parkway, Suite 400, Plano, TX 75093.

3. The Court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. § 1331 and § 1343. Venue exists in this district and division as detailed in 28 U.S.C. § 1391 because the incidents that gave rise to the claims in this case occurred in Collin County, Texas.

## II.   FACTUAL BACKGROUND

4. Richardson is a former employee of CB Jeni, who originally commenced her employment with CB Jeni in September of 2017. Richardson's job for CB Jeni was to sell townhomes in communities being built by CB Jeni in and around Collin County, Texas, and she would move from one community to another once those neighborhoods were sold out.

5. CB Jeni describes itself as a builder of "new townhomes in premium Dallas-Fort Worth locations for lifestyle-conscious homebuyers." They also claim to be "DFW's largest townhome builder."

6. Richardson is a non-Caucasian female, having skin color and physical features that would place her in the commonly referred to classification of "African American" or "black." She possesses distinct racial features and ethnic characteristics that are different from Caucasian or "white" Americans.

7. As stated above, during the time Richardson was employed by CB Jeni, she worked in various communities, having flourished wherever she was sent. Richardson had tremendous success selling townhomes at each location—as she was an excellent producer that received numerous accolades and awards, including having been given two (2) paid company trips for being a top producer. Unfortunately, a pattern started to develop where she would build up the business pipeline for a community, and then that community would be transferred to a Caucasian employee to boost that employee's sales numbers. This happened on numerous occasions.

8. In 2019, Richardson was moved to CB Jeni's Allen, Texas location, called The Villages at Twin Creeks ("Twin Creeks"). Again, Richardson started building her pipeline and started producing sales as she had done previously—and again, in 2021, CB Jeni brought in another Caucasian employee that took sales and commissions from Richardson, as Richardson had already cultivated customers that were ready to purchase any and all new townhomes coming on to the market.

9. The racially discriminatory treatment by CB Jeni towards Richardson was constant, as Richardson not only had to deal with the favoritism regarding sales, but unlike the Caucasian employees, Richardson was disciplined for minor infractions based on false and un-investigated claims. Eventually, as a result of all the discriminatory actions during her employment, Richardson was forced to seek help from a medical professional. In November of 2021, the medical professional that was treating Richardson diagnosed her with a health condition that required her to take some time off work. As a result, Richardson requested medical leave for her mental and physical health—as suggested by this medical professional—under the Family Medical Leave Act.

10. A few days after Richardson requested medical leave, CB Jeni terminated Richardson, telling her it was because of "land shortages" and there was no place to put her. This excuse was absolutely untrue as (a) the Twin Creeks community still had new buildings to be released for sale and had approximately six (6) more months left to sell townhomes before construction was to be completed; (b) the other Caucasian employee that was brought in to Twin Creeks—after Richardson had been there for years—was allowed to stay; (c) another Caucasian employee was brought in to replace Richardson after Richardson's termination; (d) other employees were allowed to continue to work their communities until they were sold out, or until construction was completed; (e) other employees were often times moved to communities temporarily until a new one became available, and (f) some employees were given preferential treatment and allowed to work from home, rather than being laid off. Given all these reasons, and that Richardson could have been sent to other communities that were opening—and did open—this excuse was clearly pretextual. It is obvious that CB Jeni was just looking for a reason to get rid of Richardson because of concerns about her mental/physical health, they did not want to deal with her medical leave request in a proper way, and they did not value African-American employees as highly as Caucasian employees.

11. In addition to terminating Richardson, CB Jeni failed to provide Richardson with the promised commissions owed to her. It is believed that CB Jeni avoiding having to pay commissions due may have been a side benefit considered by CB Jeni when deciding to terminate Richardson.

### III.   CAUSES OF ACTION

#### A.   FAMILY MEDICAL LEAVE ACT VIOLATION BY DEFENDANT

12. Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 11 as if fully stated herein.

13. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claim under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et. seq*.

14. Defendant is an "employer" as defined by the FMLA.

15. During the time that Plaintiff was employed by Defendant, she was an "eligible employee" as defined by the FMLA.

16. While Plaintiff was employed by Defendant, she had conditions that would be defined as a "serious health condition" under the FMLA.

17. Plaintiff was entitled to medical leave for her serious health condition as provided for in the FMLA.

18. Defendant interfered with, restrained, or denied Plaintiff's exercise or attempt to exercise her rights under the FMLA. See 29 U.S.C. §§ 2612, 2615.

19. Defendant discriminated and retaliated against Plaintiff for exercising or attempting to exercise her rights under the FMLA. See 29 U.S.C. §§ 2612, 2615.

20. Prior to exhausting the twelve (12) weeks of medical leave allowed under the FMLA (as discussed in 29 U.S.C. § 2612(a)(1)), Defendant terminated Plaintiff's employment.

21. Defendant terminated Plaintiff's employment for the time she needed to take off work for her serious health condition, and/or the time she was expected to take off work, which violates the protections of the FMLA.

22. Defendant committed willful violation of the FMLA, and violated 29 U.S.C. § 2612, § 2614, 29 U.S.C. § 2615(a), and 29 U.S.C. § 2615(b).

23. As a result of these willful violations of the FMLA, Plaintiff requests that she be awarded all actual, compensatory and liquidated damages, to which she is entitled, as outlined in the FMLA, as well as all equitable relief, and attorney fees and costs.

B. VIOLATION OF TEXAS COMMISSION ON HUMAN RIGHTS ACT, AND AMERICANS WITH DISABILITIES ACT

24. Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 11 as if fully stated herein.

25. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et. seq.*, and the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE. §§ 21.001 *et. seq.*

26. On or about January 25, 2022, Plaintiff filed a "Charge of Discrimination" with the Texas Workforce Commission – Civil Rights Division ("TWC") and the Equal Employment Opportunity Commission ("EEOC"), alleging disability discrimination by Defendant. Plaintiff was issued a Notice of Right to Sue from the EEOC on March 21, 2023. This action is being commenced within the required time limits.

27. Defendant is an "employer" as defined by the TCHRA and ADA, and Defendants employ more than fifteen (15) persons.

28. When Plaintiff worked for Defendant, she was an "employee" as defined by the TCHRA and ADA.

29. Plaintiff is a qualified individual person with a disability as defined by the TCHRA and ADA.

30. Defendant discriminated against Plaintiff, failed to accommodate Plaintiff's disability, and subsequently discharged her as a result of her disability, record of said disability, or because they regarded her as disabled. Because of her medical condition, Plaintiff had medical impairments that affect major life activities. In spite of Plaintiff's impairment, Plaintiff was still qualified to perform her job functions with or without a reasonable accommodation.

31. As a result of Defendant's discriminatory actions in violation of the TCHRA and ADA, Plaintiff has suffered actual damages in the form of lost wages and benefits (past and future), as well as emotional pain/distress, physical distress, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

32. As a result of Defendant's violations of the TCHRA and ADA, Plaintiff has suffered mental trauma, actual damages in the form of lost wages, commissions, and benefits (past and future), and other losses.

33. As a result of these willful violations of the TCHRA and ADA, Plaintiff requests that she be awarded all actual, compensatory and punitive damages, to which she is entitled, as outlined in the TCHRA and ADA, as well as all equitable relief, and attorney fees and costs.

C. <u>VIOLATION OF TITLE VII, 42 U.S.C. §1981, AND TCHRA</u>

34. Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 11 as if fully stated herein.

35. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claims under the Civil Rights Act of 1964 (as amended), 42 U.S.C. §§ 2000e *et. seq.* ("Title VII"), 42 U.S.C. § 1981, 42 U.S.C. § 1981(a)("Section 1981"), and the TCHRA.

36. On or about January 25, 2022—less than three (3) months after Plaintiff's termination—Plaintiff filed a "Charge of Discrimination" with the EEOC and TWC alleging race discrimination by Defendant. Plaintiff was issued a Notice of Right to Sue from the EEOC on March 21, 2023. This action is being commenced within the required time limits as:

(a) Per the Title VII prerequisites, this action is being filed within ninety (90) days of receipt of the "Dismissal and Notice of Rights" issued by the EEOC, and the EEOC charge was filed within three hundred (300) days of the events giving rise to the Title VII cause of action.

(b) Per the TCHRA, this action is being commenced (i) more than one hundred and eighty (180) days (but less than two (2) years) after the Charge was filed with the TWC, and (ii) the Charge was filed with the TWC within one hundred and eighty (180) days of the events giving rise to the TCHRA cause of action.

(c) Per Section 1981, this action is being commenced within four (4) years of the events giving rise to Section 1981 cause of action.

37. Defendant was an "employer" as defined by Title VII, the TCHRA and § 1981.

38. Plaintiff was an "employee" as defined by Title VII, the TCHRA and § 1981.

39. Plaintiff's claims of discrimination, pursuant to contract under Section 1981 are brought pursuant to the requirements and obligations of those statutes, and 42 U.S.C. § 1983.

40. During the time that Plaintiff was employed by Defendant, she was subjected to disparate treatment as defined by Title VII, the TCHRA and § 1981.

41. These actions affected the terms and conditions of Plaintiff's employment, and ultimately led to her compensation being limited, and her termination by Defendant.

42. As described above, Defendant intentionally and willfully violated Title VII, the TCHRA, and § 1981 by subjecting Plaintiff to disparate treatment because she engaged in protected activity as described by Title VII, the TCHRA, and § 1981.

43. Defendant does not have adequate policies or procedures in place to address the discrimination, nor did they implement prompt remedial measures.

44. As a result of Defendant's violations of Title VII, the TCHRA, and § 1981, (as mentioned above), Plaintiff has suffered actual damages in the form of lost wages and benefits. Plaintiff has also suffered mental trauma, loss of enjoyment of life, and other losses.

45. As a result of the willful and intentional violations of Title VII, the TCHRA, and § 1981, Plaintiff requests that she be awarded all actual, compensatory, and punitive damages to which she is entitled, equitable and/or injunctive relief, and attorney fees and costs.

### D.     BREACH OF CONTRACT

46. Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 11 as if fully stated herein.

47. Defendant and Plaintiff entered into valid and enforceable (written and verbal) contracts to pay Plaintiff sales commissions.

48. Defendant intentionally and materially breached the contracts, and the promises made related to the contracts, by failing and/or refusing to pay Plaintiff adequate commission amounts due and owing to her under the contracts, and promises related thereto, or even in honoring the specific intent to pay Plaintiff as agreed for her sales.

49. As a direct and proximate result of Defendant's breaches of the contracts, and other promises, Plaintiff has suffered damages believed to be in excess of $100,000.

50. As a result of the above-described breaches, Plaintiff was forced to retain attorneys to prosecute this action. Prior to rendering a Final Award, Plaintiff will present a demand for payment pursuant to the requirements of TEX. CIV. PRAC. & REM. CODE § 38.0001 *et seq,* thus meeting all conditions precedent and applicable law.

51. Because of the breaches, Plaintiff requests that she be awarded actual damages, pre-judgment and post-judgment interest, court costs, attorney fees, and all other damages to which she is entitled.

### E. COMMON LAW UNJUST ENRICHMENT/QUANTUM MERUIT

52. Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 11 as if fully stated herein.

53. Plaintiff—as one of the top salespersons working for Defendant—performed valuable and compensable services for Defendant throughout her employment. Defendant accepted, used, and benefitted from Plaintiff's services, including the attainment of significant revenues.

54. Defendant was reasonably notified that Plaintiff expected to be paid commission by Defendant for her services and efforts in increasing revenues. Plaintiff would never have remained employed with Defendant absent the promises and expectation that she would receive the promised commission payments for her efforts.

55. Defendant has been unjustly enriched by Plaintiff's efforts, as Defendant has reaped benefits from Plaintiff's efforts, including withholding well over One Hundred Thousand Dollars ($100,000) of compensation that should have been paid to Plaintiff in promised commissions. In essence, Defendant received the benefit of Plaintiff's efforts, Plaintiff reasonably expected payment for her services, Defendant knew Plaintiff expected such payment, and Defendant profited from Plaintiff's efforts without providing adequate compensation.

56. As a direct and proximate result of Defendant's failure to pay commissions, Plaintiff has been damaged, and she is entitled to recover the value of the services she provided to Defendant, and enriched Defendant, under the common law for Quantum Meruit and Unjust Enrichment.

57. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered actual and consequential damages of more than One Hundred Thousand Dollars ($100,000), (with the specific amount to be determined at the time of trial in this matter), pre-judgment and post-judgment interest, and all other damages to which she is entitled.

## IV. JURY DEMAND

58. Plaintiff requests a trial by jury on all claims.

## V. PRAYER FOR RELIEF

Wherefore, Plaintiff requests that Defendant be cited to appear and answer, and that on final trial, Plaintiff receives judgment against Defendant as follows:

a. Judgment against Defendant for actual damages, including lost wages, commissions, and benefits (both past and future), the sum to be determined at time of trial;

b. Judgment against Defendant for compensatory damages in the maximum amount allowed by law, (including mental anguish and loss of enjoyment of life);

c. Judgment against Defendant for liquidated and/or punitive damages in the maximum amount allowed under law;

d. An order that Defendant take such other and further actions as may be necessary to redress its violation of the law;

e. Pre-judgment and post-judgment interest at the maximum amount allowed by law;

f. Costs of suit, including attorneys' fees; and

g. The award of such other and further relief, both at law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

/s/ Robert (Bobby) Lee
**Robert (Bobby) Lee**
State Bar No. 00787888
lee@clousebrown.com

**CLOUSE BROWN PLLC**
1201 Elm Street, Suite 5250
Dallas, Texas 75270-2142
Telephone: (214) 698-5100
Facsimile: (214) 481-8881

**ATTORNEY FOR PLAINTIFF**